UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO NAVA, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>KOBE STEEL, LTD., et al.,<br><br>    Defendants. | Case No. 18-cv-01423-VC<br><br>**ORDER GRANTING MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 78, 80 |

In 2017, Kobe Steel admitted publicly that it had been falsely certifying that its metals met industry standards like minimum tensile strength, thickness, and durability. The plaintiffs allege that those metals likely ended up in their Toyota Priuses, and thus, because the certification requirements relate to the safety and performance of the vehicles, their cars are now unsafe.

1. The facts alleged in the First Amended Complaint plausibly support the conclusion that there are non-conforming Kobe-made materials somewhere in the plaintiffs' Priuses. But the plaintiffs have not alleged any sort of malfunction or other negative effect caused by the presence of those materials in Priuses. In other words, even if the plaintiffs have plausibly alleged a latent defect, they have not plausibly pleaded that the defect has caused safety issues in their cars. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022-23 (9th Cir. 2008); *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824, 832 (2006); *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 850 (N.D. Cal. 2012).

The plaintiffs respond that their Priuses need not have manifested a safety issue before bringing their warranty claims; contending instead that the cars need only "contain[] an inherent defect which is *substantially certain* to result in malfunction during the useful life of the

product." *Hicks v. Kaufman and Broad Home Corp.*, 89 Cal. App. 4th 908, 918 (2001) (emphasis added). Assuming this standard applies here, the facts alleged are insufficient to meet it.[1] The complaint describes the conclusions of an expert, hired by the plaintiffs, who surveyed Toyota's history of recalls and maintenance advisories, identified four defects that he believes were consistent with what one would expect if substandard materials were used, and surmised that Kobe may have provided some of the materials involved in the failed car parts. But even if the expert's inferences regarding Kobe-made materials being the cause of those malfunctions were plausible, none of those malfunctions occurred in Priuses. Therefore, the complaint does not adequately allege with "substantial certainty" that the non-conforming materials in the plaintiffs' cars are likely to result in malfunction. *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1028 (9th Cir. 2017).[2]

In addition, the plaintiffs do not state fraud-based claims against Toyota. Because the UCL, FAL, CLRA, and common law fraudulent concealment claims sound in fraud, the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure apply. In an attempt to satisfy this standard, the plaintiffs rely in part on the same expert analysis of Toyota's recalls discussed above, and they argue that the recalls should have put Toyota on notice that substandard metals, possibly produced by Kobe, may be causing safety risks in their vehicles. But this chain of inferences does not support a claim that Toyota had knowledge of Kobe's false certification of its metals, especially since the recalls didn't involve Priuses. Nor can Toyota's knowledge be imputed from the company's part-ownership of Kobe.

2. The plaintiffs' fraud-based claims against Kobe are somewhat difficult to understand.

---

[1] The parties dispute whether this standard applies, and there is debate about whether it does. *See, e.g.*, *Elias*, 903 F. Supp. 2d at 850-51. Because the plaintiffs lose under the standard they urge, there's no need to decide whether it's the right one.

[2] It's worth emphasizing that Toyota's motion to dismiss relies on the notion that the plaintiffs haven't discovered any specific safety issues stemming from the presence of those materials. Therefore, as Toyota's counsel acknowledged at the hearing, it's likely that, were consumers to discover more concrete evidence of safety risks posed by such materials in the future, the applicable statutes of limitations would be tolled by the discovery rule.

Kobe's misconduct, as alleged in the complaint, was falsely certifying that its metals met industry standards. Specifically, this means Kobe made affirmative misrepresentations to Toyota, which ostensibly relied on the certifications in designing and manufacturing its cars. However, the plaintiffs style their fraud-based claims against Kobe not as affirmative misrepresentation claims but as pure "omission" claims. It appears as if the plaintiffs are contending that there was an "omission" in the sense that Kobe had a duty to disclose to Toyota's customers that it was making false representations to Toyota. Whatever else may be said about this theory, it ignores the fact that, for consumer product cases involving pure omissions, the Ninth Circuit has interpreted California law as requiring a plaintiff to plead (among other things) that the undisclosed information pertained to a product's central function or created a safety hazard. *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 864 (9th Cir. 2018); *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012). And for the reasons already discussed, the plaintiffs have not adequately alleged that the substandard materials adversely affect the central function of the Prius or creates a safety hazard for the Prius.

The plaintiffs have articulated an alternative, common-sense theory that: (i) the certification requirements relate in part to safety and fuel efficiency; (ii) if Toyota and the public had known that Kobe's falsely-certified metals had found its way into Priuses, this would have affected the market value of the cars; and therefore (iii) Kobe's fraud caused the plaintiffs to pay too much for their cars. But under California law (or at least under the Ninth Circuit's interpretation of California law), there is no room for this theory in a pure omissions case involving consumer products absent a plausible allegation that the omission relates to a central function or an actual safety hazard. Thus, although perhaps they had no choice, the plaintiffs' decision to characterize their fraud claims against Kobe as omissions claims is fatal.

\* \* \*

Although it appears highly unlikely that the plaintiffs will be able to state a claim against Toyota, and it's perhaps also unlikely that they will be able to state a claim against Kobe, in an abundance of caution the plaintiffs will be granted leave to amend one last time. Any amended

complaint is due 21 days from this order.

**IT IS SO ORDERED.**

Dated: July 18, 2019

_____
VINCE CHHABRIA
United States District Judge